UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | Case No. 06 CR 420 |
| v. | ) | |
| | ) | Judge Joan B. Gottschall |
| NICHOLAS D. GROOS | ) | |
| | ) | |

# MEMORANDUM OPINION AND ORDER

On December 10, 2008, the court held a sentencing hearing for defendant, Nicholas D. Groos ("Groos"). Groos was sentenced to a term of imprisonment of sixty days to be followed by a one-year term of supervised release, as well as a $249,600 fine, which includes all costs of incarceration and supervised release, and a $400 special assessment. The reasons for this sentence were stated in open court and are fully set forth herein.

## I. BACKGROUND[1]

Groos was the president of Luxembourg-based Viking S.A. Viking S.A. is the international division of The Viking Corporation, a United States company based in Hastings, Michigan that distributes fire suppression equipment ("Viking U.S."). In December 2001, Viking S.A. had at least one outstanding order for fire sprinkler equipment from an Iranian company with which it had been doing business for some years. On or around December 11, 2001, Groos learned from colleagues that shipping the ordered goods to Iran without a license was illegal because of a U.S. trade embargo. Nevertheless, Groos and his colleagues took steps to complete the order, valued at approximately $25,000, for their Iranian customer. This was

---

[1] The facts are harmonized from both the government's and the defendant's versions of the offenses. Where there was an explicit disagreement, the defendant's version has been provided.

1

accomplished by shipping the goods from the Viking U.S. Michigan warehouse, using an Illinois-based freight forwarding company, to an intermediary in the United Arab Emirates ("UAE") who would forward the goods to Iran. Groos made the decision even though he knew that the ultimate destination of the goods was Iran, that pursuant to the embargo a license was required for such an export, and that a competitor of Viking's had been caught conducting a similar business transaction to Iran and fined $10,000 by the U.S. Department of Commerce.

The order was shipped to the UAE, in two parts, on or around January 4, 2002 and February 13, 2002, according to the shipper's export declarations. One part successfully arrived in Dubai, UAE. The second was intercepted by the U.S. Immigration and Customs Enforcement after notification by the freight forwarding company that had been alerted to the actual final destination of the shipment. Neither Viking U.S. nor Viking S.A. had the required authorization from the U.S. government to export goods from the United States to Iran.

As a result of the embargo violation, the U.S. Department of Commerce fined both Viking U.S. and Viking S.A. The government filed a criminal complaint against Groos on June 7, 2006, more than four years after the transaction occurred. Groos was arrested the next day. On May 3, 2007, a grand jury returned an indictment charging Groos on four counts relating to the January 4, 2002 and February 13, 2002 shipments. The charges were brought under the International Emergency Economic Powers Act, 50 U.S.C. §§ 1701-06 ("IEEPA"), the Iranian Transactions Regulations, 31 C.F.R. § 560 ("ITR"), and the Export Administration Regulations, 31 C.F.R. § 730-74 ("EAR"), which were promulgated pursuant to the Export Administration Act, 50 U.S.C. app. §§ 2401-20 ("EAA").

Groos filed four pretrial motions. On June 13, 2008, the court granted the motion to

strike surplusage (specifically paragraphs 2 through 10 of Count 1, also incorporated into the other three Counts), and denied the motion to dismiss insufficient indictment, the motion to dismiss Counts 2 and 4, and the motion for depositions of foreign witnesses. On August 7, 2008, Groos entered a blind plea of guilty as to all counts of the indictment and the court entered a finding of guilty. A Presentence Investigation Report ("PSR") was prepared and the government and Groos submitted sentencing memoranda. Sentencing was held on December 10, 2008. At the hearing, the government and defense counsel submitted argument, focusing on comparable cases and sentences pursuant to the court's request, and Groos orally supplemented his written submission to the court. The court sentenced Groos in open court and sets forth its reasons more fully below.

## II. SENTENCING PROCEDURE

"In sentencing a defendant, the district court is obliged first to calculate the correct advisory guidelines range and then to decide whether to impose a sentence within the range or outside of it." *United States v. Miranda*, 505 F.3d 785, 791 (7th Cir. 2007) (citing *United States v. Robinson*, 435 F.3d 699, 700-01 (7th Cir. 2006)). The first step requires calculation of the applicable guidelines. *Gall v. United States*, ___ U.S. ___, ___, 128 S. Ct. 586, 596 (2007); *Miranda*, 505 F.3d at 791. However, "the [g]uidelines are not mandatory and thus the [district court's] range of choice dictated by the facts of the case is significantly broadened." *Gall*, ___ U.S. at ___, 128 S. Ct. at 602. The second step in sentencing requires an application of the factors set forth in 18 U.S.C. § 3553(a), which remains mandatory even though the guidelines are treated as advisory. *Miranda*, 505 F.3d at 791 (citing *United States v. Booker*, 543 U.S. 220, 261-63 (2005)).

3

Typically, a court considers the PSR and its interpretation of the guidelines and then hears arguments by prosecution and defense as to whether a guideline sentence is appropriate. *Id.* (citing *Rita v. United States*, ___ U.S. ___, ___, 127 S. Ct. 2456, 2459 (2007)). The court then determines whether to impose a sentence at, above, or below the guideline range, keeping in mind that "[a] sentencing court should not consider itself constrained by the guidelines to the extent that there are sound, case-specific reasons for deviating from them." *Gall*, ___ U.S. at ___, 128 S. Ct. at 598. Where the evidence presented indicates that the case falls outside the "heartland" of the intended guidelines, or where the guideline fails to properly reflect the § 3553(a) considerations, or where the case warrants a different sentence, the court may impose a sentence below the guideline range. *See Rita*, ___ U.S. at ___, 127 S. Ct. at 2465 (discussing the importance of subjecting the defendant's sentence to adversarial testing by the district court). Nevertheless, despite the advisory nature of the guidelines, the Seventh Circuit has cautioned that the sentencing judge "must give respectful consideration to the judgment embodied in the guidelines range that [s]he computes." *U.S. v. Higdon*, 531 F.3d 561, 562 (7th Cir. 2008).

### III. ADVISORY GUIDELINES RANGE

The counts of conviction for Groos are not listed in the Statutory Index of the guidelines manual; therefore, the court must apply the most analogous offense guideline. U.S.S.G. § 2X5.1. The parties agree that § 2M5.1 applies because it concerns evasion of export controls and financial transactions with countries supporting international terrorism. Section 2M5.1 provides:

(a) Base Offense Level (Apply the greater):
    (1) 26, if (A) national security controls or controls relating to the proliferation of nuclear, biological, or chemical weapons or materials were evaded; or (B) the offense involved a financial transaction with a country supporting international terrorism; or

4

      (2) 14, otherwise.

U.S.S.G. § 2M5.1 (2007).[2]  The government and probation asserted that the base offense level was 26.[3]  In his memorandum, Groos argued that a base offense level of 14 applies because Groos's criminal activity does not meet the requirements of § 2M5.1(a)(1).  The court rejects Groos's argument and finds that the correct base offense level is 26.

      Groos argues, in part, that his case, exporting sprinklers to Iran in January and February of 2002, does not involve a financial transaction with a country supporting international terrorism.  Section 2M5.1 defines "a country supporting international terrorism" as "a country designated under section 6(j) of the Export Administration Act (50 U.S.C. App. 2405)."  U.S.S.G. § 2M5.1, Application Note 4.  Thus, the guideline itself relies on the very statute that Groos has pled guilty to violating for its definitions, and details about what may not be exported to Iran are laid out in the EAA promulgating regulations.  *See, e.g.*, 15 C.F.R. § 742.8.  Moreover, the U.S. government classifies Iran a state sponsor of terrorism and has done so for some time.  *See* U.S. Dep't of State, Country Reports on Terrorism (Apr. 28, 2006) (including Iran in a list of state sponsors of terror), http://www.state.gov/s/ct/rls/crt/2005/64337.htm.  Thus, Groos's attempt to argue that Iran is not covered by § 2M5.1(a)(1)(B) is unpersuasive.

      Furthermore, contrary to Groos's argument, the conduct arguably is also covered

---

[2] The court applies the 2007 version of the Guidelines, along with the May 2008 amendments. *See United States v. Demaree*, 459 F.3d 791, 795 (7th Cir. 2006) (holding that changes to Sentencing Guidelines can apply retroactively without running afoul of the *ex post facto* clause because the guidelines are advisory, not binding).

[3] The probation officer reduced the base offense level by three levels for acceptance of responsibility, ending with a total offense level to be 23 with a criminal history category of I, which placed Groos's advisory guideline range at 46 to 57 months of custody with a fine of between $10,000 and $100,000.

under § 2M5.1(a)(1)(A). Courts have held that violations of trade embargos, such as the embargo against Iran, constitute evasions of national security controls within the meaning of § 2M5.1(a)(1)(A). *See United States v. McKeeve*, 131 F.3d 1, 14 (1st Cir. 1997) (observing that separation-of-powers concerns prevent a court from substituting its judgment for that of the executive in regard to whether certain exports threaten national security interests); *United States v. Sevilla ("Sevilla II")*, No. 04 CR 0171, 2006 WL 3486872 (N.D. Ill. Nov. 29, 2006) (applying a base offense level of 26 where a defendant shipped goods to Iran). Thus, the court concludes that Groos's argument is without merit, under either sub-section of § 2M5.1(a)(1), and begins with a base offense level of 26.

Groos next urges the court to depart from the guidelines pursuant to § 2M5.1, Application Note 2, because mitigating factors in respect to the characteristics of the transaction are present in an extreme form, and pursuant to §5K2.20, in consideration of Groos's single aberrant act in contrast to his otherwise law-abiding and responsible life.

Section 2M5.1 recognizes that a sentencing court should consider the characteristics of the offense and provides that:

> In determining the sentence within the applicable guideline range, the court may consider the degree to which the violation threatened a security interest of the United States, the volume of commerce involved, the extent of planning or sophistication, and whether there were multiple occurrences. Where such factors are present in an extreme form, a departure from the guidelines may be warranted.

U.S.S.G. § 2M5.1, Application Note 2. Groos argues that all four factors are met in this case. The government argues that the Application Note applies only where the court is considering a sentence within the guideline range, or, in the alternative, that extreme

6

circumstances warranting a departure are not present. The government's first argument is without merit; the plain language of the last sentence of Application Note 2 indicates that a departure from the § 2M5.1 guideline may be appropriate.[4]

The court must first consider "the degree to which the violation threatened a security interest of the United States." *See* U.S.S.G. 2M5.1, Application Note 2. It is true that Groos pled guilty to exporting fire sprinklers to Iran, a breach of the embargo against trade with that nation. Furthermore, he did so in January and February 2002, a time when the United States was in a state of high alert following the attacks on the World Trade Center on September 11, 2001. In fact, President George W. Bush, in his January 2002 state of the union address, identified Iran as one of the countries that formed the "axis of evil." The White House, President Delivers State of the Union Address (Jan. 29, 2002), http://www.whitehouse.gov/news/releases/2002/01/20020129-11.html. Nevertheless, there is no evidence that Groos's intent or effect was to subvert national security. The technology behind the fire suppression sprinklers is neutral in purpose. The government offered no evidence that the sprinklers were intended for use as anything other than their stated purpose or even that the sprinklers could be converted to any terrorist use that would threaten national security in the United States. Therefore, the court concludes that the threat to the security of the United States was minimal.

Next, the court considers "the volume of commerce involved, the extent of

---

[4] The Seventh Circuit has noted that *Booker* "made the departure terminology obsolete." *United States v. Rosby*, 454 F.3d 670, 676 (7th Cir. 2006). Whether the term used in Application Note 2 is the correct one to use in this context need not detain the court long, however, since the Seventh Circuit has noted that characterization of a sentence outside of the guideline range as a "departure," rather than a variance, is not error absent "reason to think that the choice of words made a substantive difference." *Id.* at 677.

planning or sophistication, and whether there were multiple occurrences." *Id.* As the PSR points out, only one sale, split into two shipments, having an approximate value of $25,000, is at issue. Groos made a single decision to violate the embargo and did so within the context of an outstanding order to a long-term customer. Nor did the transaction require significant planning. At the hearing, the government stated that it did not consider Groos's violation to be particularly sophisticated, and the court agrees. Finally, the value of the sale represents a tiny percentage of Viking's $450 million in global sales and did not result in significant, if any, personal profit for the defendant. The court finds, in sum, the mitigating factors listed under § 2M5.1, Application Note 2, to be present in a sufficiently extreme form to warrant a departure from the guidelines.

In considering the appropriate departure from level 26, the court is informed not only by the extreme nature in which the mitigating factors are present in this case, but also by the history of § 2M5.1. Even though the Seventh Circuit has held that there is no retroactivity problem with using guidelines that became effective after the crime to sentence a defendant, the court finds that the amendment history of § 2M5.1 lends credence to Groos's argument that the harshest punishment should be reserved for cases where weapons or military technologies are at issue and where the threat to national security is apparent.

In November 2001, § 2M5.1 was amended to increase the base offense level from 22 to 26 because of congressional concerns over insufficient sentences for certain offenses involving the importation and exportation of nuclear, chemical and biological weapons, materials or technologies. Groos's violation does not implicate these issues.

Section 2M5.1 was amended again in November 2002, as part of the U.S. PATRIOT Act, to include an alternative basis for a base offense level of 26 where "the offense involved a financial transaction with a country supporting international terrorism." This amendment took effect after Groos had shipped the sprinklers to Iran. Although the court recognizes that, with the 2002 amendment, Congress determined that aiding countries that support terrorism is as culpable as subverting national security, the court also recognizes that, before the 2002 amendment, there was an arguable basis for concluding that the violation of an embargo would be subject to a base offense level of 14, rather than 22. *See, e.g.*, *United States v. Sevilla*, No. 04 CR 0171, 2006 WL 1710139, at *6 (N.D. Ill. June 13, 2006) (concluding that a base level of 14 applied where the defendant shipped goods to Iran in violation of the embargo), *vacated on recons.*, 2006 WL 3486872 (N.D. Ill. Nov. 29, 2006).

Recognizing that the history of § 2M5.1 suggests that the higher base offense level is intended for acts that seriously threaten the security of the United States and finding that Application Note 2 suggests that this is not such an act and that departure downward is therefore appropriate, the court reduces the base offense level of 26 six levels to 20.[5]

Groos also argues in his memorandum that a further departure is warranted under § 5K2.20, which allows a downward departure where the crime represents aberrant behavior. Section 5K2.20 applies "in an exceptional case" only if "the defendant committed a single criminal occurrence or single transaction that (1) was committed

---

[5] The court has departed downward two levels for each of the three factors in Application Note 2 it has found to be significantly absent in this case. While Groos made one decision, there were

without significant planning; (2) was of limited duration; and (3) represents a marked deviation by the defendant from an otherwise law-abiding life." U.S.S.G. § 5K2.20(b). The facts in this case do not support a downward departure under § 5K2.20(b). *See United States v. Bradley*, 196 F.3d 762, 771 (7th Cir. 1999) (requiring conduct to "be something in the nature of a spontaneous, sudden, or unplanned act"); *United States v. Carey*, 895 F.2d 318, 325 (7th Cir. 1990) (stating that conduct must be "more than merely something 'out of character' or the defendant's first offense").[6] Although this act was out of character and appears to have been motivated by a serious lapse of judgment, there is evidence that Groos was warned not to complete the transaction, was aware of penalties imposed on another company for doing so, and chose to go forward anyway. The court does not believe that a departure for "aberrant behavior" is appropriate in these circumstances. Therefore, the court rejects Groos's argument.

The PSR applied a three level reduction for acceptance of responsibility. The court finds this to be appropriate given that Groos pled guilty and has been cooperative with the government. The total offense level is, therefore, 17. Groos has no prior criminal convictions and therefore has a criminal history category of I. This places the advisory guideline range at 24-30 months of imprisonment. The court now turns to the question of whether to impose a sentence at, above, or below the guideline range.

---

multiple shipments, so the court makes no departure based on the number of occurrences.
[6] The guidelines were amended in 2000 in recognition of the split of opinion as to whether there was a "spontaneity" requirement embedded within § 5K2.20. However, there is no reason to believe that the Seventh Circuit would change its position as a result of the amendment. *See, e.g.*, *United States v. Hillyer*, 457 F.3d 347, 352 (4th Cir. 2006) (continuing its pre-2000 requirement for the act to be "spontaneous and seemingly thoughtless"); *United States v. Bueno*, 443 F.3d 1017, 1023 (8th Cir. 2006) (continuing its pre-2000 requirement for the offense to "have been a spontaneous and thoughtless act").

## IV. 18 U.S.C. § 3553(a) FACTORS

The defense argues that a guideline sentence is "outside the heartland" of sentences in other cases involving similar crimes and that the § 3553(a) factors demonstrate that such a sentence should not be imposed on Groos. Section 3553(a) provides in relevant part:

> (a) Factors to be considered in imposing a sentence.--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--
> (1)  the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2)  the need for the sentence imposed--
>   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>   (B) to afford adequate deterrence to criminal conduct;
>   (C) to protect the public from further crimes of the defendant; and
>   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . .
> (6)  the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct . . . .

18 U.S.C. § 3553(a); *see Miranda*, 505 F.3d at 793 (observing that the "primary purposes of a criminal sentence are to reflect" the factors listed in § 3553(a)(2)).

The nature and circumstances of the offense, which the court must consider pursuant to § 3553(a)(1) have, for the most part, been considered pursuant to § 2M5.1, Application Note 2. Applying the same reasoning to the facts discussed previously, the court concludes that the nature and circumstances of the offense are such that a significant variance from the guideline is justified. However, because the court has already reduced the base offense level in consideration of these facts, it has not included this factor in its determination of a further variance from the guidelines.

11

Groos argues that he is otherwise an upstanding citizen and family man such that any term of imprisonment would have a severe impact on his family; he submitted numerous letters from friends and family members in support. *See id.* Unfortunately, this evidence does not demonstrate that the impact would be sufficient to justify a variance from a guideline sentence under Seventh Circuit case law. *See U.S. v. Canoy*, 38 F.3d 893, 907 (7th Cir. 1994) (observing that to warrant a deviation from a guideline sentence, the defendant must show "that the period of incarceration set by the Guidelines would have an effect on the family or family members beyond the disruption to family and parental relationships that would be present in the usual case" because disintegration of family life is to be expected). Nevertheless, the court received many letters attesting to Groos's character and opining that this incident was an isolated one, unlikely to be repeated. The court accepts these representations and considers them pursuant to § 3553(a)(1). Moreover, the court finds that this crime constituted a single, isolated, but serious error in judgment and that Groos is unlikely to reoffend or to be a threat to society. *See* § 3553(a)(2)(C)-(D).

At the hearing, the court observed that it appeared that a period of jail time would be necessary to accomplish the deterrent goals of sentencing, as well as the § 3553(a)(2)(A) factors. It recognized, however, that counsel for the defense had presented, in tabular form, evidence that cases with similar facts often resulted in sentences of probation (as well as sometimes resulting in substantial periods of incarceration).[7] In its brief and at oral argument, the defense emphasized the centrality of

---

[7] The defense offers a summary of similar crimes and the resulting sentences. Unfortunately, most of the judgments are not published and do not contain statements of reasons, and the court

§ 3553(a)(6) to its argument that a sentence of probation and payment of a fine was sufficient to meet the goals of sentencing. However, the government urged the court to impose a guideline sentence, arguing that there was nothing atypical about Groos, or his crime, and that it was impossible to draw conclusions from random judgments in unpublished cases. The defense proffered further argument on the issue of comparable sentences at the hearing. After the court rejected any attempt to compare cases where the underlying charge differed from that here, the defense focused on *Sevilla II*, No. 04 CR 171, 2006 WL 3486872 (N.D. Ill. Nov. 29, 2006) (Darrah, J.), as the most factually analogous case.

The defendant in *Sevilla* was sentenced to five years probation, with the condition of an initial six-month period of home detention and electronic monitoring, 100 hours of community service in the area of homeland security, a $10,000 fine, and an assessment of $100. *See* Judgment in a Criminal Case, *United States v. Sevilla*, No. 04 CR 0171 (N.D. Ill. Nov. 30, 2006) (docket no. 58). The sentence resulted from a guilty plea to a single count of the indictment, namely an evasion of export controls in violation of 50 U.S.C. § 1702 and § 1705(b) committed from October 2003 through February 2004. *Id.*

Sevilla entered a blind plea to a charge that he "knowingly and willfully attempted to engage in a transaction that had the purpose of evading or avoiding a prohibition on the unauthorized direct or indirect exportation and supply, from the United States or by a United States person, of goods and technology from the United States to Iran." *Sevilla II*, 2006 WL 3486872, at *1. The equipment was a Hydraulic Floor Model

---

has access, therefore, to limited information regarding the facts of the case and the reasoning of the sentencing court.

Testing Machine. *Id.* The *Sevilla II* court applied § 2M5.1 as the most analogous sentencing guideline. *Id.* at *2. It reconsidered its original conclusion that the base level offense was 14, finding instead that the base level offense was 26 because the defendant "attempted to evade export controls to a country to which an embargo exists against because of national security concerns." *Id.* at *3. The court reduced the level by two points for acceptance of responsibility and began with a guideline range of 51 to 63 months, based on a total offense level of 24 and a criminal history category I. *Id.*

Turning to the § 3553 factors, the court determined that "[s]everal factors mitigate the offense level of 24 for Sevilla." *Id.* Specifically, the court noted that the conduct occurred on only one occasion, the defendant had no other criminal history, the volume of commerce was minimal, "there [was] no evidence that attempted export was made with criminal or terroristic intent," and the goods were not a product that "threatened controls relating to the proliferation of nuclear, biological, or chemical weapons." *Id.* In addition, the court noted that a sentence of 51-63 months was inconsistent with other sentences for similarly-situated defendants. *Id.* The court therefore concluded that the total offense level should be 10. *Id.* at *4.

Judge Darrah had considered three comparator cases[8] in an earlier order. *See Sevilla I*, 2006 WL 1710139, at *6. He found Sevilla's conduct comparable to that of the

---

[8] Unfortunately, case numbers, citations, and details of the charges for the comparator cases are absent from Judge Darrah's order. The court has been unable to locate any published sentencing opinions through Westlaw or LexisNexis for any of the cases. The table provided by the defense indicates that *United States v. Kyriacou* is case number 04 CR 265, filed on May 11, 2004 in the Eastern District of Pennsylvania and that the defendant was charged with making false statements and violations of the IEEPA. In *United States v. Quinn*, case number 05 CR 0018 in the U.S. District Court for the District of Columbia, the defendant was charged with violations of the IEEPA and EAR.

defendants in *United States v. Kyriacou* and *United States v. Talyi*. *Id.* at *5. In *Kyriacou*, the defendant stole and exported night-vision devices to Iran via Austria. *Id.* He was sentenced, based on a total offense level of 12, to five years' probation and $8,000 in restitution. *Id.* Judge Darrah found Kyriacou's conduct more egregious than Sevilla's. *Id.* In *Talyi*, the defendant was sentenced, based on a total offense level of 12, to five months incarceration and five months of home confinement after he exported oil field equipment to Libya and Sudan. *Id.* In contrast, Judge Darrah rejected the government's comparison to *United States v. Quinn & Mahmood*, a case where the president and vice president of a forklift manufacturer received a sentence of 39 months of imprisonment for shipping radiators for forklifts to Iran through the UAE.[9] *Id.*

Research discloses a dearth of comparable published (or even unpublished) cases concerning sentences pursuant to 2M5.1, particularly in this circuit. The sole published Seventh Circuit case is *United States v. Shetterly*, 971 F.2d 67 (7th Cir. 1992). In *Shetterly*, the appellate court upheld a sentence of 41 months' imprisonment where the defendant attempted to export a controlled microwave amplifier, worth $7,150, to West Germany without a license in violation of the EAA. *Id.* at 68, 70. The sentence was the minimum sentence under the applicable guideline range for a base offense level of 22 under the version of § 2M5.1 in effect at that time. *Id.* at 76. The defendant appealed, in part, arguing that the sentencing judge failed to consider Application Note 2. *Id.* Specifically, the defendant believed that the fact that it was no longer illegal to export the goods in question was relevant to the sentence imposed. *Id.* The Seventh Circuit found

---

[9] The defendant in *Quinn* was recently granted a new trial because a key witness made false statements. *See United States v. Quinn*, 537 F. Supp. 2d 99, 122 (D.D.C. 2008). Thus, it would

that the court knew it could depart but exercised its discretion in refusing to do so. *Id.* at 77.

Unfortunately, the *Shetterly* opinion is of limited utility for comparative purposes because it predates *Booker*, which means the court imposed a sentence treating the guidelines as mandatory, not advisory as they now are treated. *See Gall*, ___ U.S. at ___, 128 S. Ct. at 602 (holding that the district court has discretion to vary from the guideline sentence). It also predates the amendments to § 2M5.1, which shed light on the Sentencing Commission's reasoning for the two-step base offense level. Nevertheless, the court finds it instructive that the sentence of imprisonment imposed was the minimum sentence under the applicable guideline range. *Shetterly*, 971 F.2d at 76. *Shetterly*, together with *Sevilla* and other judgments cited by the defense, support Groos's argument that courts generally do not impose harsh punishment on embargo crimes that involve non-military goods.[10] *Cf. United States v. Shaaban*, 252 Fed. App'x 744, 746 (7th Cir.

---

be inappropriate to consider the sentence for comparative purposes in this case.

[10] Although the court is hesitant to rely on cases where it has been unable to review the facts and reasoning of the sentencing court, the table of cases provided by the defense indicates the following cases may be comparable in terms of the charges, date of filing of the criminal case, item exported, and countries involved: *United States v. Angehr*, No. 08 CR 0003 (E.D. La., filed Jan. 4, 2008) (sentenced for violation of the IEEPA for exports of computer software to Iran to five years probation, four to six months confinement to a halfway house, and a $250,000 fine plus forfeiture); *United States v. Freyer*, No. 06 CR 891 (C.D. Cal., filed Dec. 1, 2006) (sentenced for violations of the IEEPA for exporting petrochemical valves to Iran and Iraq via Australia to three years probation, six months of home detention, 240 hours of community service, and a $5,000 fine plus costs for the co-defendant who pled guilty and to seventeen months of imprisonment and two years of supervised release for the co-defendant did *not* plead guilty); *United States v. Ghashim*, No. 06 CR 283 (S.D. Tex., filed Aug. 14, 2006) (sentenced for violations of the IEEPA for exports of computers to Syria via the UAE to three years probation); *United States v. Khan*, No. 04 CR 441 (E.D.N.Y., filed May 5, 2004) (sentenced for violations of the IEEPA for exports of aircraft parts to Iran to five years probation, 300 hours of community service, $100,000 fine plus forfeiture); *United States v. Rezaei*, No. 07 CR 380 (N.D. Ga., filed Nov. 14, 2007) (sentenced for violations of the IEEPA for exporting computers to Iran to an

2007) (unpublished opinion) (upholding a sentence of 160 months of imprisonment, above the guideline range, where the defendant was accused of attempting to sell to Iraq the names of CIA agents working there and engaged in obstructive conduct before trial). Thus, the court concludes, pursuant to § 3553(a)(6), as well as the § 3553(a)(2) factors, that a long period of incarceration is an inappropriate penalty for Groos's actions.

      The government contends that Groos's culpability rests not on the nature of the offense, but on the willfulness of the act. Groos admits that, before he made the decision to export goods to Iran in violation of the U.S. embargo, he knew that a competitor had faced an administrative fine of $10,000 for a similar offense. This penalty did nothing to deter him from the illegal conduct. During the hearing, the court expressed concern that, given that Groos was willing to break the law and face a fine, a sentence of probation and fine might not "promote respect for the law" or "afford adequate deterrence to criminal conduct." *See* § 3553(a)(2)(A)-(B). The facts demonstrate that Groos did not take the crime, or its likely penalties, seriously, at least not as seriously as breaking faith with a long-term customer. Yet, a violation of a trade embargo with a nation on the U.S. State Department list of "state sponsors of terror" is a serious matter. The court is unwilling to impose a sentence that allows Groos, or others similarly situated, to minimize the seriousness of their actions.

      Groos argues that imprisonment is unnecessary for deterrent reasons because he has already suffered more than expected: he has lived under the threat of imprisonment

---

unspecified amount of time served, three years of supervised release and forfeiture); *United States v. Mahmood*, No. 04 CR 365 (D.D.C., filed Aug. 10, 2004) (sentenced for violations of the EAR for exporting lift truck parts to Iran via the UAE to time served, seventeen months, and two years supervised release).

for seven years; he was arrested and charged with a crime rather than being subject to administrative action only; he was charged with a more serious crime than other similarly-situated defendants; he was unable to plead to a lesser offense; he will have a widely-known felony conviction as a result of a public U.S. Department Commerce list; and he was punished by his company because he was demoted, reassigned, and deprived of half of his salary and a bonus for a year. The government argues that Groos's argument essentially boils down to an inappropriate request for leniency because Groos never dreamed he would get into so much trouble.

Groos's arguments regarding the charges and plea deal are unpersuasive given the government's unbridled discretion in these areas. *See, e.g.*, *United States v. Roberson*, 474 F.3d 432, 436 (7th Cir. 2007) (remanding a case for resentencing to effectuate the harsh charging choice of the government where the court had attempted to sentence the defendant based on the underlying conduct, not the chosen charge). Groos's protestations regarding the punishment inflicted on him by his company also ring hollow: he was not fired from the company; in fact, he was quickly reinstated to a vice presidential position drawing an annual salary of approximately $250,000.

However, the delay in prosecution in this case was substantial and troublesome; the length of time necessary to resolve the case given the plea negotiations that took place, however, was predictable. The government states that the delay in *filing* the case resulted from the fact that Groos lived overseas, which hampered his arrest. However, Groos lived in Luxembourg and Singapore, both of which have extradition treaties with the United States. Additionally, he worked for Viking the entire time. The U.S.

Department of Commerce must have been in contact with both Viking U.S. and Viking S.A. during that time because it assessed fines against both branches of the company. Finally, Groos travels to the United States on business regularly and maintains property in this country. The government's excuse for the delay in prosecution is, therefore, unpersuasive. The court finds that Groos has been punished in some degree by the extended period of uncertainty relating to crimes that occurred in early 2002. It also finds that inclusion of Groos's sentence on the public Major Cases List, maintained by the U.S. Department of Commerce, will have a serious deterrent effect, both on Groos himself and on his colleagues and associates. *See* U.S. Dep't of Commerce, *Major Cases List*, *available at* http://www.bis.doc.gov/complianceandenforcement/othereetopics.htm. The court takes both of these factors into account in determining an appropriate sentence.

The cases cited by the defense, particularly *Sevilla*, that impose sentences far below the guideline sentence for similar crimes, convince this court that a long period of incarceration is not necessary to serve the goals of sentencing. However, the court cannot justify a departure or variance as extreme as that in *Sevilla*. After careful consideration, the court concludes that a sentence of sixty days of incarceration, one year of supervised release, and a substantial fine[11] is sufficient, but not greater than necessary, to comply with the purposes of § 3553(a)(2) and serve the private and public interests at stake.

---

[11] The fine ordered was above the guideline range. The court concluded that given Groos's financial means and the limited sentence of incarceration imposed, a fine at this level was reasonable.

## V. CONCLUSION

Groos is sentenced to a term of imprisonment of sixty days to be followed by a one-year term of supervised release, as well as a $249,600 fine, which includes all costs of incarceration and supervised release, and a $400 special assessment. The defense's oral motion for reconsideration and to impose house arrest in lieu of incarceration is denied in light of the court's conclusion that some jail time, however minimal, is necessary to effectuate the goals of sentencing. Groos shall self-report on, and pay the fine in full by, January 20, 2009.

ENTER:

_____/s/_____
JOAN B. GOTTSCHALL
United States District Judge

DATED: December 16, 2008